**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

MATTHEW GLENN,

        Plaintiff,

vs.

CHALLENGE MFG. HOLDINGS, INC,
a Delaware corporation,

        Defendant.

Civil Action No.:

HON.

---

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
Bos & Glazier PLC
A division Cunningham Dalman PC
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapds,MI 49503
(616) 458-6814
brad@cunninghamdalman.com
robert@cunninghamdalman.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Matthew Glenn, by his counsel, Cunningham Dalman PC, states as follows as his Complaint against defendant Challenge Mfg. Holdings, Inc. ("Challenge"):

## JURISDICTIONAL ALLEGATIONS

1. This is an action brought for Challenge's violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* and the Persons with Disabilities Civil Rights Act ("PDCRA"), M.C.L. 37.1101, *et seq.*

2. This court has subject matter jurisdiction over Glenn's FMLA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States. This court

has pendent jurisdiction over the PDCRA claims.

3. Plaintiff, Matthew Glenn, is a citizen of the United States and the State of Michigan. He resides in Muskegon County. Glenn was an employee of Challenge.

4. Challenge is a Delaware for-profit corporation with a facility, where Glenn worked, located at 1401 S Washington Ave, Holland, MI 49423.

5. Challenge has its corporate headquarters located at 3200 Fruit Ridge Ave NW, Walker, MI 49544.

6. Glenn was employed by Challenge for at least 12 months prior to the leave of absences that led to his termination and worked at least 1,250 hours of service for Challenge during the 12 months preceding his leave request. As such, Glenn was an "eligible employee" pursuant to 29 U.S.C. § 2611(2).

7. Challenge employed 50 or more employees at the facility where Glenn worked during each of 20 or more calendar work weeks in the previous calendar year and was an "employer" as defined under the FMLA, pursuant to 29 U.S.C. § 2611(4).

8. Glenn was an individual with a disability because he had a physical or mental characteristic that substantially limited one or more of his major life activities, as defined under the PDCRA, M.C.L. 37.1103.

9. Challenge was an employer with one or more employees as defined under the PDCRA, M.C.L. 37.1201.

10. The events giving rise to this cause of action occurred in the Western District of Michigan.

**GENERAL ALLEGATIONS**

11. Glenn began his employment with Challenge on March 2, 2020. Glenn

worked as a weld mechanic.

12. Challenge manufactures automotive components for the global automotive market.

13. Challenge has an attendance policy that assigns points for different types of occurrences. (Exhibit 1).

14. For example, if employees (called "Team Members") are absent, they are assessed one full point. If employees are absent, and they report the absence more than 30 minutes before the start of their shift, they are assessed .75 points.(Id.)

15. Challenge's attendance policy requires its employees to report absences daily, unless they were on an approved Leave of Absence, such as an approved FMLA leave. (Id.) The policy stated: "Team members do not need to call in if they are on an approved paid time-off or Leave of Absence." (Id.)

16. As part of its employee handbook, Challenge has an FMLA Policy (Exhibit 2).

17. The policy states that employees must follow Challenge's rules for reporting absences. (Id.)

18. Glenn suffers from a chronic health condition — bi-polar disorder with severe anxious distress.

19. Glenn is under a doctor's care for his health condition and is prescribed medications and therapy to treat his condition.

20. When Glenn experiences a bout of depression caused by his bi-polar disorder, he is physically sore and exhausted, and his muscles are weak. The muscle weakness often makes even simple tasks very strenuous.

21. Glenn also experiences insomnia and excessive sleepiness during bouts of his serious health condition.

22. On March 23, 2022, Glenn requested an accommodation for his bi-polar disorder. (Exhibit 3).

23. Challenge rejected Glen's accommodation request and told Glenn that he did not need an accommodation. Challenge told Glenn that he should take any needed time off by using his accrued paid time off ("PTO") account.

24. During the first week of October 2022, Glenn requested FMLA leave from Challenge because of his serious health condition.

25. Glenn's medical provider submitted a medical certification to Challenge on Glenn's behalf. (Exhibit 4).

26. The certification authorized Glenn to take a continuous leave from October 8, 2022 to October 25, 2022 for intensive treatment. (Id.) It also supported Glenn's need for time off to attend follow-up treatments. (Id.)

27. Challenge approved Glenn's request for intermittent FMLA leave. (Exhibit 5).

28. Challenge's FMLA Designation Notice also approved Glenn for absences as necessary for Glenn to receive psychiatric treatment at Pine Rest Christian Mental Health Services ("Pine Rest") from October 8, 2022 through October 24, 2022, and approved Glenn working a reduced schedule from October 25 to October 28, 2022. (Id.)

29. Challenge provided Glenn with a list of his FMLA Rights and Responsibilities. (Exhibit 6).

30. The Rights and Responsibilities stated that "while on leave, you may be required to furnish Human Resources with periodic reports of your status and intent to

return to work, at least every two weeks." (Id.).

31. On October 10, 2022, Challenge reset all of its employees' attendance points through its human resources software.

32. Challenge reset the attendance points because it had adopted a mandatory overtime schedule that resulted in many employees missing work and reaching unprecedented disciplinary levels through its no-fault attendance program.

33. On Monday, October 10, 2022, Glenn reported to the Pine Rest partial inpatient program to treat his serious health condition.

34. Although Challenge designated Glenn's FMLA leave as continuous, it required him to report his absences daily.

35. Glenn reported his absences at least 30 minutes prior to the beginning of his shift.

36. Glenn received points pursuant to Challenge's attendance policy on October 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 24, 25, and 28, despite his approved FMLA leave. (Exhibit 7).

37. On October 20, 2022, Glenn's medical provider submitted a notice to Challenge that detailed the dates of Glenn's absences for intensive treatment and detailed his need for other absences following his partial in-patient treatment. (Exhibit 8).

38. On October 26, 2022, Challenge issued Glenn a written warning for his absences.

39. On November 1, 2022, Challenge terminated Glenn's employment due to excessive absenteeism. (Exhibit 7).

40. The twelve absences listed in Glenn's termination letter included eleven absences necessitated by his serious health condition, and protected by his designated and approved FMLA leave. (Id.)

41. Glenn has been harmed by the actions and inactions of Challenge.

## COUNT I
## INTERFERENCE WITH RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT - TERMINATION RESULTING FROM MEDICAL LEAVE OF ABSENCE

42. Glenn incorporates by reference paragraphs 1 through 41 as fully set forth herein.

43. Glenn suffered from a "serious health condition" requiring continuing treatment from a health care provider as defined in 29 U.S.C. § 2611(11).

44. Glenn was entitled to 12 weeks of unpaid leave of absence to care for his serious health condition as described in 29 U.S.C. § 2612(a)(1)(D).

45. Challenge disciplined Glenn and terminated Glenn for absences that were protected absences under the term of the FMLA.

46. Challenge did not follow its own policies for the administration of FMLA leave.

47. Challenge's actions interfered with Glenn's rights under the FMLA, regardless of Challenge's intent.

48. Glenn suffered damages as the direct result of Challenge's violations of the FMLA, including lost wages and fringe benefits. Glenn's FMLA protected absences led to formal discipline against Glenn and were the only reason offered by Challenge for the Glenn's termination.

49. Challenge's actions interfered with Glenn's rights under the FMLA, regardless of Challenge's intent.

## COUNT II
## FMLA RETALIATION - TERMINATION FOR EXERCISING FMLA RIGHTS

50. Glenn incorporates by reference paragraphs 1 through 49 as fully set forth herein.

51. Glenn was engaged in a statutorily protected activity when he requested FMLA leave due to his own serious health condition.

52. Challenge had actual notice of Glenn's need for FMLA-protected absences and received a medical certification from Glenn's medical provider, supporting Glenn's need for an FMLA protected leave.

53. Challenge terminated Glenn because of Glenn's protected leave.

54. Glenn has sustained damages as a result of Challenge's retaliation against him for the exercise of his protected FMLA leave.

WHEREFORE, plaintiff, Matthew Glenn, respectfully requests this court to enter a judgment in his favor and against Challenge as follows:

    A.    Legal Relief

        (1)    Compensatory damages in whatever amount he is found to be entitled;

        (2)    Liquidated damages equal to the amount of compensatory damages awarded; and

        (3)    An award of interest, costs, and reasonable attorney fees and expert witness fees.

    B.    Equitable Relief

        (1)    An order reinstating Glenn to his former position with Challenge or a comparable position if his former position is no longer available; or an award of front pay if reinstatement is no longer feasible;

    (2)    An injunction prohibiting any further acts of wrongdoing, discrimination, or retaliation; and

    (3)    Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT III
## VIOLATIONS OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
(Termination of Employment Based on Disability)

55. Glenn incorporates by reference paragraphs 1 through 54 as fully set forth herein.

56. Glenn was an individual with a disability because he had a mental characteristic of bi-polar disorder and anxiety that substantially limited his ability to sleep, exercise good judgment, regulate his behavior, generate energy, or think clearly, which is included in the definition of a determinable physical or mental characteristic resulting from disease, injury, or functional disorder, as defined under the PDCRA, M.C.L. 37.1103, or he had a record of such a disability, or he was regarded as having such a disability by defendants.

57. Glenn was a person with a qualified disability because he could perform the essential functions of his job with a reasonable accommodation, absences during bouts of depression and absences to attend weekly appointments. *See* M.C.L. 37.1102(2).

58. Challenge discriminated against Glenn on the basis of his disability, when Challenge terminated his employment because of his disability, because he had a record of a disability, or because he was regarded by Challenge as having a disability. M.C.L. 37.1202(b).

59. Glenn has sustained damages as a result of Challenge's termination of his employment based on his disability.

WHEREFORE, plaintiff, Matthew Glenn, respectfully requests this court to enter a judgment in his favor and against Challenge as follows:

A. Economic damages based on his lost wages and fringe benefits, both past and future;

B. Non-economic damages for injuries such as emotional distress, pain and suffering, harm to reputation, and other consequential injuries;

C. Attorney fees and costs;

D. Appropriate equitable relief, including an order of reinstatement or, in the alternative, an award of front pay; and

E. Such other relief as may be deemed appropriate at the time of final judgment.

                                                  BOS & GLAZIER PLC
                                                  A division of CUNNINGHAM DALMAN PC
                                                  Attorneys for Plaintiff

Date: February 10, 2023          By:   *Bradley K. Glazier*
                                                     Bradley K. Glazier (P35523)
                                                     Robert M. Howard (P80740)

                                                 BUSINESS ADDRESS:
                                                  990 Monroe Avenue, N.W.
                                                  Grand Rapids, MI 49503
                                                  (616) 458-6814

**JURY DEMAND**

Plaintiff, Matthew Glenn, by his counsel, Bos & Glazier, PLC, a division of Cunningham Dalman PC, requests a trial by jury.

                                                BOS & GLAZIER PLC
                                                A division of CUNNINGHAM DALMAN PC
                                                Attorneys for Plaintiff

Date: February 10, 2023        By:   */s/ Bradley K. Glazier*
                                                    Bradley K. Glazier (P35523)
                                                    Robert M. Howard (P80740)

                                              BUSINESS ADDRESS:
                                                 990 Monroe Avenue, N.W.
                                                 Grand Rapids, MI 49503
                                                 (616) 458-6814